**NOT FOR PUBLICATION**                                             **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INTENDIS, INC. and DOW PHARMACEUTICAL SCIENCES, INC., | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiffs, | Civil Case No. 11-2838 (FSH) (PS) |
| v. | **OPINION & ORDER** |
| RIVER'S EDGE PHARMACEUTICALS, LLC, | Date: November 10, 2011 |
| Defendant. |  |

**HOCHBERG, District Judge:**

  This matter comes before the Court upon the Defendant's motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, to transfer venue pursuant to 28 U.S.C. §1404(a).  The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Fed. R. Civ. P. 78.

## I.  BACKGROUND

### A.  Procedural Background

  On May 18, 2011, Plaintiffs Intendis, Inc. ("Intendis") and Dow Pharmaceutical Sciences, Inc. ("Dow") filed this action (the "New Jersey Action") against Defendant River's Edge Pharmaceuticals, LLC ("River's Edge").  Plaintiffs allege that Defendant infringed U.S. Patent No. 6,387,383 ("the '383 Patent") by filing Abbreviated New Drug Application ("ANDA") No. 202470 with the FDA, seeking to market a generic version of Plaintiff Intendis's Desonate® product, pursuant to 35 U.S.C. § 271(e)(2).  On May 19, 2011, Plaintiffs filed an

identical complaint against Defendant in the United States District Court for the Northern District of Georgia (the "Georgia Action"). Defendant has filed Motions to Dismiss in both New Jersey and Georgia and a Motion to Transfer the New Jersey Action to the Northern District of Georgia.

### B.   Factual Background

Dow, the owner of the '383 Patent, is a Delaware corporation with its principle place of business in California. Compl. ¶ 3. Intendis, the exclusive licensee of the '383 Patent and maker of Desonate®, is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 2.[1] River's Edge is a Georgia LLC with its principal place of business in Suwannee, Georgia.[2] Def. Br. at 3.

The '383 Patent is listed in the FDA Orange Book as covering Desonate®, which is the subject of New Drug Application ("NDA") No. 21844, of which Intendis is the holder. Compl. ¶ 10. River's Edge's ANDA seeks approval to manufacture and sell a generic Desonide Gel, 0.05% formulation based on the Reference Listed Drug Desonate®. Id. ¶ 11. River's Edge filed the ANDA with a "Paragraph IV" certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) alleging that the ANDA does not infringe the '383 Patent. Id. ¶ 12.

---

[1] As Defendant points out, Intendis is the United States affiliate of Intendis GmBH, a German company and wholly-owned subsidiary of Bayer HealthCare, itself a division of Bayer AG. Def. Br. at 3.

[2] River's Edge contends that the Complaint mistakenly alleges that it is a Florida LLC, but that it is, in fact, a Georgia LLC. Declaration of Brendan Murphy ("Murphy Decl."), ¶¶ 1, 3. However, Plaintiffs have submitted documents from the Florida and Georgia Secretaries of States' offices demonstrating that River's Edge converted from a Georgia LLC to a Florida LLC in January 2010. Exs. 6-11 to the Declaration of Vikram Mathrani ("Mathrani Decl."). It is undisputed, however, that River's Edge has its primary place of business in Georgia.

II.    **LEGAL STANDARD**

28 U.S.C. §1404(a) permits a District Court to transfer a civil case to another district where venue is proper:

> For the convenience of parties and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack* 376 U.S. 612, 616 (1964) (internal quotations and citations omitted).  A decision to transfer an action under this provision rests with the sound discretion of the District Court.  *Stewart Org., Inc. v. Ricoh Corp.* 487 U.S. 22, 29 (1988).  As a preliminary matter, the District Court must determine that the venue to which transfer is proposed is one in which the action "might have been brought."  28 U.S.C. §1404(a).

On a motion to transfer pursuant to §1404(a), the District Court must undertake a "flexible and individualized analysis," balancing the factors set forth in the statute as well as a number of other case specific factors.  *Stewart Org., Inc.*, 487 U.S. at 29.  The statute provides three factors for consideration: (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. 28 U.S.C. §1404(a).

In determining whether to transfer a case pursuant to §1404(a), courts in the Third Circuit apply the public and private interest factors outlined in *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879-80 (3d Cir. 1995).  These private interest factors include: (1) plaintiff's choice of forum; (2) defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, but only to the extent that the files could not be produced in

one of the fora.  *Id.* at 879.  The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in the controversy; (5) the public policies of the fora; and (6) judicial familiarity with the applicable state law in diversity cases. *Id.* at 879-80.  A case should only be transferred if "the balance of convenience of the parties is *strongly* in favor of defendant."  *Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

The Third Circuit has also noted that the District Court "must also consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum."  *Lony v. E.I. DuPont de Nemours & Co*., 935 F.2d 604, 612 (3d Cir. 1991) (citations omitted).

## III.   DISCUSSION

The Court must first consider whether venue is proper in the Northern District of Georgia, where Defendant seeks to have the case transferred.  Pursuant to 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  As Defendant has its principal place of business in Suwanee, Georgia, the case certainly could have been brought in the Northern District of Georgia.

### A.   Plaintiffs' Choice of Forum

Plaintiffs chose to file actions in both this District and the Northern District of Georgia, but Plaintiffs have made clear that they prefer this forum and are prepared to dismiss the Georgia Action provided that Defendant does not challenge jurisdiction in this District.  Compl. ¶ 8. Defendant argues that Plaintiffs' forum choice is entitled to little deference because they filed an

identical action in another district.  This argument is without merit.  Under the Hatch-Waxman Act, a patent holder is entitled to a 30-month stay of the FDA's approval of an ANDA by filing an infringement action against the ANDA filer within 45 days of receiving notification of the ANDA filing.  *See* 21 U.S.C. § 355(j).  As our sister district court has explained: "[t]he statute is silent on whether a patent holder loses its right to sue if its suit is dismissed for lack of personal jurisdiction after the 45-day window has expired."  *Pfizer, Inc. v. Sandoz, Inc.*, No. 09-742 (JJF), 2010 WL 256548, at *3 (D. Del. Jan. 20, 2010).  Thus, "the ambiguities in the Hatch-Waxman Act put patent holders 'between a jurisdictional rock and a hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only know safe forum . . . .'"  *Id.* (quoting *Abbott Labs v. Mylan Pharms.*, *Inc.*, No. 05-6561, 2006 WL 850916, at *8 (N.D. Ill. Mar. 28, 2006)).  Here, the Georgia Action was clearly filed as a protective measure and it is clear that the District of New Jersey is Plaintiff's preferred forum.

Defendant also argues that Plaintiffs' forum choice should be given less weight since New Jersey is not Dow's home forum and Intendis, only a licensee of the patent, is incorporated in Delaware and is wholly owned by German parent entities.  According to Defendant, Intendis is only present as a named Plaintiff in order to manufacture jurisdiction in New Jersey.  However, as Intendis is the exclusive licensee of the '383 Patent, the NDA holder for Desonate®, and the party that sells and markets Desonate®, it is certainly not a superfluous party to an infringement action brought against a party intending to produce and market a generic version of Desonate®.  Additionally, the fact that Intendis is a subsidiary of German companies does not mean its forum choice should be disregarded.  Intendis's corporate parents are not parties to this action.  Intendis's commercial operations are conducted in and directed from New

Jersey, therefore the Court gives considerable weight to Plaintiffs' forum choice.  Accordingly, this factor weighs against transfer.

However, as discussed below, because the Court finds that the "central facts of [the] lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight." *Nat'l Prop. Investors VIII v. Shell Oil Co.*, 917 F.Supp. 324, 327 (D.N.J. 1995).  Therefore, while the Court accepts that Plaintiffs have chosen this forum and that Intendis has an obvious interest in litigating here, this factor is given less weight due to the location of operative facts in Georgia.

### B.      Defendant's Choice of Forum

As evidenced by its motion, Defendant prefers the Northern District of Georgia.  As Defendant is a small company with its principal place of business in the Northern District of Georgia and Plaintiffs have at least demonstrated their willingness to litigate there by filing an identical action in that district, this factor weighs in favor of transfer.

### C.      Where the Claim Arose

Both parties address this factor using a "center of gravity" analysis.  *See Refined Recommendation Corp. v. Netflix, Inc.*, No. 07-4981 (DMC), 2008 WL 474106, at *4 (D.N.J. Feb. 15, 2008) ("In patent infringement cases, 'as a general rule, the preferred forum is that which is the center of gravity of the accused activity.'  To determine the 'center of gravity,' consideration must be offered to the location of the product's development, testing, research and production, as well as where marketing decisions are made, 'rather than where limited sales activity has occurred.'") (quoting *Ricoh Co. v. Honeywell, Inc.,* 817 F.Supp. 473, 482 (D.N.J. 1993)).  Defendant argues that the center of gravity of this case lies in Georgia because the infringing product was conceived by Defendant in Georgia and tested and developed mainly in

Georgia.[3]  While, some of Defendant's product testing took place in New Jersey, Defendant

argues that the only New Jersey connection claimed by Plaintiff is that Defendant plans to sell

the product in New Jersey—which, Defendant points out, hasn't happened yet.

Plaintiffs argue that the normal center of gravity factors (location of development, testing,

research, production, and marketing of the infringing product) are inapplicable in this ANDA

action as no generic product yet exists.  Plaintiffs further argue that, if Defendant's product

receives FDA approval, it will be produced in North Carolina, not Georgia, and there will likely

be no marketing efforts as it is a generic drug.  Therefore, Plaintiffs contend, the center of gravity

is located in New Jersey where Intendis conducts and controls commercial operations for

Desonate®.

In determining the center of gravity in a patent infringement action, the district court will

normally focus on the activity surrounding the production of the infringing product, including

development, testing, research, production, as well as marketing and sales strategy.  *See Ricoh*,

817 F.Supp. at 482 n.17.  Yet, in an infringement action based on an ANDA filing, much of this

activity surrounding the infringing produce is yet to occur.  However, this alone does not mean

that the Court will find that the infringement claim arose in Plaintiffs' home forum.  Given that

this is an infringement action based on an ANDA filing, there is less infringing activity (e.g.,

production, marketing, sales, etc.) than in a typical infringement action.  Nonetheless, the Court

still finds that Plaintiffs' claim arises out of Defendant's activity in Georgia—the location of the

operative facts.  *See Pfizer v. Apotex, Inc.*, No. 08-948 (LDD), 2009 WL 2843288, at *3 n.5 (D.

Del. Aug. 13, 2009) (finding the location of the preparation and submission of the ANDA to be

the location of the injury giving rise to a patent infringement action); *Pfizer, Inc. v. Synthon*

---

[3] Defendant acknowledges that some testing and development took place in North Carolina
where the product's manufacturer is based.  Murphy Decl. ¶ 6.

*Holding, B.V.*, 386 F.Supp.2d 666, 675-76 (M.D.N.C. 2005) (holding that patent infringement

claim stemming from ANDA filing arose where ANDA was prepared and submitted, finding that

"this claim will involve substantial inquiry into the product itself as described in the ANDA, and

the focus of that inquiry will involve the work related to the preparation of the ANDA"); *Reckitt*

*Benckiser Inc. v. Watson Labs., Inc.*, No. 09-3933, 2009 WL 4756515, at *4 (S.D.N.Y. Dec. 8,

2009) (rejecting plaintiff's argument that there is no locus of operative facts in ANDA-based

infringement actions in favor of "the more accepted view that in a patent infringement action, the

locus of operative facts is the jurisdiction where the design and development of the infringing

patent occurred") (internal quotations omitted); *Bristol-Meyers Squibb Co. v. Andrx Pharms.,*

*LLC*, No. 03-2503, 2003 WL 22888804, at *3 (S.D.N.Y. Dec. 5, 2003) (holding that in a patent

infringement action based on an ANDA filing, the location of the operative facts is the location

where the design and development of the infringing product occurred).  In *Bristol-Meyers*

*Squibb*, the Southern District of New York faced a set of facts similar to those in this case.  The

plaintiff filed identical infringement actions in New York, where it resided, and Florida, where

the defendant resided, for infringement based on defendant's filing of an ANDA.  The court

found that Florida was the locus of the operative facts and that the plaintiff's forum choice

deserved less deference because the action had only a tenuous connection to New York.  *See*

2003 WL 22888804, at *4-5.   The Court finds that this factor weighs in favor of a transfer.

### D.    The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

Defendant argues that the Northern District is more convenient as it is a small, privately

held company with its only office located in that District.  Defendant claims that due to its size

and small workforce, litigating this action in New Jersey will be disruptive to the company.

Defendant argues that because Plaintiffs are each larger companies with significantly greater

revenues, they will not be burdened as much by having to litigate outside of their home fora.
Plaintiffs do not dispute that they are larger companies than Defendant, but instead argue that the
Court should give less weight to Defendant's argument under this factor because Defendant has
previously litigated cases in this forum.  However, given the relative size and financial
conditions of the parties, the Court finds that this factor weighs in favor of a transfer.

   **E.**  **The Convenience of the Witnesses**

   This factor need not be considered as neither party contends that there are any witnesses
that would be unavailable in one of the fora.

   **F.**  **The Location of Books and Records**

   This factor also need not be considered as neither party contends that there any books and
records that could not be easily produced in either forum.

   **G.**  **The Public Interest Factors**

   The only two public interest factors raised by the Parties are the relative congestion of the
court dockets and the local interest in deciding local controversies.  Defendant argues that there
are approximately 40% more civil cases pending in the District of New Jersey than in the
Northern District of Georgia.  However, since Defendant fails to provide the more important
statistic, the number of pending cases per judgeship, and because this Court has no reason to
believe there is a significant difference, this factor is neutral.

   Plaintiffs briefly argue that the local interest factor weighs against a transfer as New
Jersey has a greater interest in deciding a controversy involving a local Plaintiff who operates its
distribution of a product from New Jersey.  However, this factor weighs equally in favor of a
transfer as Georgia certainly has no less of an interest in deciding a controversy involving a

Defendant that operates its distribution of a product from Georgia.  Therefore, this factor is neutral.

IV.    **CONCLUSION**

Upon weighing the *Jumara* factors, the Court finds that transfer to the Northern District of Georgia is appropriate.  The only factor weighing against a transfer is Plaintiffs' choice of forum, however, as stated above, this choice is given less weight due to the fact that "the central facts of [the] lawsuit occur outside of the chosen forum."  *Nat'l Prop. Investors VIII*, 917 F.Supp. at 327.  As there is an identical case between the parties already underway in the Northern District of Georgia, a transfer consolidating the two actions serves the interests of judicial economy.[4]

**IT IS** on this 10th day of November, 2011

**ORDERED** that Defendants' Motion to Transfer to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) [docket # 16] is **GRANTED**;[5] and it is further

**ORDERED** that this case is **TRANSFERRED** to the Northern District of Georgia; and it is further

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.

---

[4] The Court notes that because jurisdiction is proper here, Plaintiffs may re-file in this Court should the case be dismissed in the Northern District of Georgia on jurisdictional or venue grounds.

[5] Because the Court finds that a transfer is appropriate, it will not address Defendant's motion to dismiss.